IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW JERSEY

## AT FEBRUARY TERM, 1870.

---

JANE CUFF, ADMINISTRATRIX OF MICHAEL CUFF, DE-
CEASED, v. THE NEWARK AND NEW YORK RAILROAD
COMPANY, CLINTON H. SAGE, AND JOHN J. FLANA-
GAN.

1. The rule is now firmly established, that when the owner of lands
undertakes to do a work which, in the ordinary mode of doing it, is a
nuisance, he is liable for any injury which may result from it to third
persons, though the work is done by a contractor exercising an inde-
pendent employment, and employing his own servants; but when the
work is not in itself a nuisance, and the injury results from the negli-
gence of such contractor or his servants in the manner of executing it,
the contractor alone is liable unless the owner is in default in employ-
ing an unskillful or improper person as the contractor.

2. The principle upon which the *superior*, who has contracted with another, exercising an independent employment for the doing of the work, is exempt from liability for the negligence of the latter in the execution of it, applies as between the contractor and his sub-contractor.

3. Damage to be recovered must be both the natural and proximate consequence arising from the wrong complained of, and not from the wrongful act of a third party remotely induced thereby.

4. The intervention of the independent act of a third person between the wrong complained of and the injury sustained, which act was the immediate cause of the injury, is made a test of that remoteness of damage which forbids its recovery.

5. The Newark and New York Railroad Company contracted with F. & Co. for the graduation of their road-bed. With the consent of the company, F. & Co. sub-contracted the rock excavation with one S. Before the sub-contract was made, it was understood by the contractors and by the officers of the company, that the rock would be removed by S., by blasting with nitro-glycerine; a magazine for storing the nitro-glycerine necessary for that purpose, was located on the company's land, under the direction of their engineer. By the contract between the company and F. & Co., the contractors were forbidden to sub-let without the company's consent, and were required to discharge incompetent and disorderly workmen, when required to do so by the company's engineer. S., without the knowledge or consent of the company, stored in the magazine certain cans of nitro-glycerine which belonged to the United States Blasting Company, and which he kept there for sale on the orders of the blasting company. An order for glycerine being sent to S. by the blasting company, his foreman directed B., one of his employees, to fill the order. B., in doing so, removed one of the blasting company's cans from the magazine a distance of one hundred and fifty yards, but not off the railroad company's lands, and there by his negligence, an explosion occurred, by which the deceased was killed. B. was employed by S. specially to take charge of the nitro-glycerine in the magazine, and was an incompetent person for that business. In an action against the railroad company and F. & Co., the contractors, by the administratrix of the deceased, to recover damages for his death, *Held*—

1. That the stipulations in the contract between the railroad company and the contractors, as to sub-contracting, and the removal of incompetent employees, did not create the relation of master and servant between the railroad company or F. & Co., and the servants of the sub-contractor; nor raise a duty for the non-performance of which an action could be maintained by third persons against the railroad company, or F. & Co., for injuries resulting from the negligence of an employee of the sub-contractor.

2. That the permission of the company that S. might use their lands

for a magazine in which to store oil necessary for the operations of blasting on the work, did not authorize him to use them for the purpose of engaging in a traffic in oil which belonged to others.

3. That the company were not answerable for injuries to third persons, which happened through the negligence of a servant of S. in the management of nitro-glycerine, which belonged to another company engaged in the manufacture of that article, and which had been clandestinely stored in the magazine by S., and was kept by him for sale on the orders of its owners, without the knowledge of the company.

---

On rule to show cause.

This was an action on the case to recover damages for the death of the plaintiff's husband, under the act of March 3d, 1848.

At the trial before the Hudson Circuit, the plaintiff recovered a verdict against all the defendants, with an assessment of damages at $3000. A rule to show cause why the verdict should not be set aside was allowed by the Justice before whom the cause was tried.

Argued November Term, 1869, before the CHIEF JUSTICE, and Justices WOODHULL, DEPUE and VAN SYCKEL.

For the rule, *J. P. Jackson* and *J. F. Randolph.*

Contra, *S. B. Ransom* and *C. C. Beaman,* of New York.

The opinion of the court was delivered by

DEPUE, J. The reason mainly relied on for making the rule absolute is, that the plaintiff failed to establish the liability of the defendants for the wrongful act or neglect from which the death resulted. The Newark and New York Railroad Company, at the time in question, were engaged in constructing a railroad from Newark to Jersey City. The injuries which the deceased sustained were received upon that part of the work which was known as section four. The graduation and masonry upon that section were contracted

for by the company with the other defendants, who were partners, under the name of " Flanagan & Sage." Flanagan & Sage had, with the consent of the company, sub-contracted the rock excavation to one T. P. Shaffner, and it was understood by all parties, before the contract was made with Shaffner, that the rock was to be removed .by blasting with the use of nitro-glycerine. The negligence from which the death of the deceased resulted, was that of one Burns, in the use of nitro-glycerine on the premises owned by the company. Burns was an employee of Shaffner, the sub-contractor, selected by him for the particular duty of taking charge of the nitro-glycerine used on the works. After the sub-letting to Shaffner, he applied to the engineer of the company for permission to occupy a portion of their land, upon which he might erect a magazine in which to store the oil necessary for executing the work of blasting. The permission was granted, and the magazine was located by the directions of the company's engineer.

The contract between Flanagan & Sage and the company contained the following clauses : " The contractor shall not be at liberty to sub-let any part of the work without the consent of the engineer; no sub-contract, however, shall relieve the contractor of his liabilities under this contract, should the sub-contractor fail to perform the work undertaken by him." " The contractor shall employ competent foremen and workmen, and experienced mechanics; and he shall immediately discharge, whenever required to do so by the engineer, any men considered by the engineer to be incompetent and disorderly, or disposed to foment discontent or mischief on the work." These provisions were not incorporated in the contract of Flanagan & Sage with Shaffner, except that it was declared therein that Shaffner should have the same privileges that were enjoyed by Flanagan & Sage in the use of the railroad company's grounds for the constructing of houses, shops, &c., required for the carrying on of the said blasting.

It will be assumed on the present occasion, in order to reach at once the merits of the controversy, that the magazine,

as located, when used for the storage of nitro glycerine, was a public nuisance; and that the engineer of the company was their agent in consenting to that use of their lands; and that Burns was an improper person, by reason of habits of intoxication, to be entrusted with the handling of the highly dangerous article of which he had the charge; and that he was intoxicated at the time of the accident. This concession obviates the necessity of examining the evidence bearing upon disputed questions of fact, and resolves the inquiry into a consideration of pure questions of law upon facts not in dispute.

The liability of the company to respond for the injuries received by the deceased, was sought to be placed on two grounds: *First*, that Burns, under the circumstances of this case, was the servant of the company; and *Second*, that the injury resulted from a nuisance, erected and maintained on their lands by their consent.

In *Bush* v. *Steinman*, 1 *B. & P.* 404, it was held that the owner of lands was liable for all injuries resulting from the negligence of employees engaged in executing work upon the land, though the work was done by a contractor who had contracted to do the work, and who employed the servant through whose negligence the injury happened. In that case, the action was against the owner of lands for causing a quantity of lime to be placed on the highway, by means of which the plaintiff and his wife, in driving along the highway, were overturned and much injured. The defendant, having purchased a house by the roadside, contracted with a surveyor to put it in repair for a stipulated sum. A carpenter, having a contract under the surveyor to do the whole business, employed a bricklayer under him, and he again contracted for a quantity of lime with a lime-burner, by whose servant the lime in question was laid in the road. The defendant was held liable. After a recognition as authority for a time, *Bush* v. *Steinman* was overruled. At first, its authority was restricted to liability for negligence in relation to real estate, making a distinction in this respect between the owners of

real and personal property; finally this distinction was abandoned, and the authority of *Bush* v. *Steinman* was completely denied, and no case which was once esteemed as authority has been more completely overthrown. *Quarman* v. *Burnett*, 6 *M. & W.* 499; *Hobbit* v. *The London & N. W. R. R. Co.*, 4 *Exch.* 254; *Painter* v. *Pittsburg*, 46 *Penn.* 213; *Blake* v. *Ferris*, 5 *N. Y.* 48; *Pack* v. *The City of N. Y.*, 8 *N. Y.* 222; *Hilliard* v. *Richardson*, 3 *Gray* 349. The cases on this subject are collected in the American note to *Holliday* v. *St. Leonards*, 11 *C. B.*, *N. S.* 209; and in a note to the case of *Painter* v. *Pittsburg*, in 3 *Am. Law Reg.*, *N. S.* 358; 1 *Redfield on Railways*, § 129; *Shearman & Redfield on Negligence*, § 79.

The rule is now firmly established, that where the owner of lands undertakes to do a work which, in the ordinary mode of doing it, is a nuisance, he is liable for any injuries which may result from it to third persons, though the work is done by a contractor exercising an independent employment and employing his own servants. But when the work is not in itself a nuisance, and the injury results from the negligence of such contractor or his servants in the execution of it, the contractor alone is liable, unless the owner is in default in employing an unskillful or improper person as the contractor. *Ellis* v. *Sheffield Gas Consumers' Co.*, 2 *E. & B.* 767; *Peachy* v. *Rowland*, 13 *C. B.* 182; *Hole* v. *S. & S. Railway Co.*, 6 *H. & N.* 488; *Steel* v. *The S. E. Railwag Co.*, 16 *C. B.* 550; *Rapson* v. *Cubit*, 9 *M. & W.* 710; *Reedie* v. *London & N. W. R. R. Co.*, 4 *Exch.* 244; *Knight* v. *Fox*, 5 *Exch.* 721; *Milligan* v. *Wedge*, 12 *A. & E.* 737; *Overton* v. *Freeman*, 11 *C. B.* 867; *Packard* v. *Smith*, 10 *C. B.*, *N. S.* 470–480; *Butler* v. *Hunter*, 7 *H. & N.* 826; *Allen* v. *Hayward*, 7 *Q. B.* 960; *Chicago City* v. *Robbins*, 2 *Black* 418; *Storrs* v. *City of Utica*, 17 *N. Y.* 104; *Scammon* v. *City of Chicago*, 25 *Ill.* 424; *McGuire* v. *Grant*, 1 *Dutcher* 356.

The counsel of the plaintiff, on the argument, did not attempt to sustain or resuscitate *Bush* v. *Steinman* for the support of this branch of their case. With much ingenuity

they argued that the exemption of the owner from liability for the negligence of the servants of the contractor, arose from the fact that he had no control over the servant, and no power to discharge an incompetent person who was employed by the contractor, and hence their reasoning was, the company are not within the reason of this exemption, because of the stipulations in the contract requiring their consent to a subletting, and authorizing them to require the discharge of any person employed on the work, considered by the engineer to be incompetent. The fallacy of this argument lies in avoiding the real subject of inquiry, and in assuming an erroneous principle as the foundation of the maxim *respondeat superior.* The point of inquiry is not under what circumstances is the owner, who contracts for the execution of work on his lands, exempt from liability for the negligence of employees of the contractor. It consists in the search for the principle upon which one man incurs a liability for an act not done by himself. That liability flows from the relation of master and servant, a relation incident to which is the power to select the servant, and direct him in the execution of the duties of his employment, and to discharge him when found to be incompetent; and also the duty to so control his acts that no injury may be done to third persons. In *Quarman* v. *Burnett,* 6 *M. & W.* 499, Parke, B., in delivering the opinion of the court (page 509), says, that " upon the principle that *qui facit per alium facit per se,* the master is responsible for the acts of his servant; and that person is undoubtedly liable who stood in the relation of master to the wrong-doer—he who had selected him as his servant, from the knowledge or belief in his skill and care, and who could remove him for misconduct, and whose orders he was bound to receive and obey. But the liability by virtue of the principle of the relation of master and servant must cease where the relation itself ceases to exist, and no other person than the master of such servant can be liable, on the simple ground that the servant is the servant of another, and his act the act of another." Substantially the same views were expressed by Mr. Justice Mullett

in *Blake* v. *Ferris*, 1 *Seld.* 54. In *McGuire* v. *Grant*, 1 *Dutcher* 371, Mr. Justice Elmer says: " A master is responsible for the tortious acts of his servant, which were done in his service. This responsibility grows out of, is measured by, begins and ends with his control over them. If it is his duty to control them in what they do, he is responsible for his neglect. But where workmen do not stand in such relation to the person sought to be charged as to make it his duty to control them, they are not his servants, and he is in no wise responsible for their acts, except in some cases where, by subsequently adopting and sanctioning those acts, he renders himself, legally, a participator in them."

There are cases in which persons who have contracted to have work done have been held liable for negligence in the manner of doing it; but those are cases in which the contract created only the ordinary hiring for service, or the party who let the work retained and exercised the control and direction of the employees by whom the manual labor was done, or personally participated in the wrong complained of. *Randleson* v. *Murray*, 8 *A. & E.* 109; *Sadler* v. *Henlock*, 4 *E. & B.* 570; *Burgess* v. *Gray*, 1 *C. B.* 578; *Fenton* v. *Dublin Steam Packet Co.*, 8 *A. & E.* 835.

These cases do not infringe upon the rule that the relation of master and servant must substantially and really exist, in order to raise a liability on the part of the former for the negligent acts of the latter; on the contrary, they recognize the rule and deduce the liability from the fact that the employees doing the work were really the servants of him under whose directions they were engaged in executing it, or the entire control of the work to be done had not been abandoned to the contractor.

There is another class of cases in which municipal corporations have been held answerable for the negligence of the servants of their contractors in making excavations in the public streets: and railroad companies have been held for damages sustained by passengers by reason of defects in the platforms of their depots, occasioned by the carelessness of

employees of contractors, to whom the work of construction had been let. These cases do not rest on the relation of master and servant. The obligation results from another principle: from the duty, in the one instance, to see that the streets are kept safe for the passage of persons and property, and in the other, to provide for passengers a safe means of access to and from the cars—a duty independent of the means by which the obstructions or defects were occasianed. *Storrs v. City of Utica*, 17 *N. Y.* 104; *Chicago City* v. *Robbins*, 2 *Black* 418; *Holmes* v. *The N. E. Railway Co., L. R.* (4 *Exch.*) 254; *Gillis* v. *Railway Co.*, 8 *Am. Law Reg., N. S.* 729; *Smith* v. *Docks Co., L. R.* (3 *C. P.*) 326.

Except under the special circumstances above indicated, (none of which exist in this case,) the rule is invariable, that the master only is responsible for the acts of the servant. In some cases it is difficult "to say whose servant a person is that does the injury; when you decide that, the question is solved." Per Williams, J., *Milligan* v. *Wedge*, 12 *A. & E.* 737.

In *Quarman* v. *Burnett et al.*, the defendants, who were the owners of a carriage, and were accustomed to hire horses to draw it for a day, or a drive, of a livery man, who provided a driver, were held not liable for an injury done to a third person through the negligence of the driver, although they provided him with a livery and paid him a fixed sum for each drive. In that case there was some evidence that the defendants had selected the particular driver. On this latter point, Baron Parke says: "If the driver be the servant of a job master, we do not think he ceases to be so by reason of the owner of the carriage preferring to be driven by that particular servant, where there is a choice amongst more, any more than a hack post-boy ceases to be the servant of an inn-keeper, where a traveler has a particular preference of one over the rest on account of his sobriety and carefulness; if, indeed, the defendants had insisted upon the horses being driven, not by one of the regular servants, but by a stranger to the job master, appointed by themselves, it would have made all the difference." The employment of an engineer

by a company having work done under a contract, to super-
intend it and direct *what* shall be done, will not make the com-
pany liable for negligence in the *manner* of doing the work,
though it was directed to be done by him.    *Steel* v. *S. E.
Railway Co.*, 16 *C. B.* 550; *Brown* v. *Accrington Cotton Co.*,
3 *H. & C.* 511, 519; *Pack* v. *Mayor of N. Y. City*, 4 *Seld.*
222; *Kelly* v. *Same*, 1 *Kernan* 432.    In *Walker* v. *Goe*, 3
*H. & N.* 395 (*in Error*, 4 *H. & N.* 350), the act of Parlia-
ment empowering the defendants, commissioners, to lease
a canal, authorized and required the commissioners to give
notice to the lessees, if, during the term, they should permit
the navigation to be out of repair, requiring that the neces-
sary repairs should be commenced, proceeded with, and
finished within reasonable periods to be named by the com-
missioners; and if the lessees should neglect to commence,
proceed with, or finish such repairs in the manner so specified,
then the said commissioners were authorized to take possession
of the tolls and other proceeds of the said navigation, and to
cause such repairs to be done under their own direction, and
to pay the necessary expenses thereof out of the said tolls and
other proceeds.    The canal was leased, and by the default of
the lessee one of the locks became dilapidated and out of
repair, and fell in, in consequence of which the navigation
was suspended and the barge of the plaintiff was delayed.
The condition of the lock was known to the commissioners a
sufficient time before it fell in, to enable them to give the
notice, and for the performance of the repairs, and they failed
to give the notice.    It was held by the court that whatever
the obligation might be as between the commissioners and the
public to keep the canal open, the commissioners were not
liable to the plaintiff for his loss, because of the non-exercise
of their powers to correct the fault of the lessee in the man-
agement of the property leased to him.

The case of *Blake* v. *Ferris* is an illustration of the ina-
bility of third parties to take advantage of stipulations in-
serted in the contract for the protection of the parties to it,
or out of abundant caution to provide for any contingent

injuries that might occur. It was there held that a provision in a license or grant by municipal authorities, to persons to construct, at their own expense, a sewer in a public street, "that the grantees should cause proper guards and lights to be placed at the excavation, and should be answerable for any damage or injuries which might be occasioned to persons, animals, or property, in the construction of the sewer," did not inure to the benefit of a stranger so as to render the grantees liable to him for the negligence of servants or agents for whose conduct they would not otherwise be responsible. See also *Pack* v. *City of N. Y.*, 8 *N. Y.* (4 *Seld.*) 222.

A case directly in point with that under consideration will be found in *Reedie* v. *Railway Co.*, 4 *Exch.* 244. That was an action by the administratrix of a person who was killed while passing under a viaduct in the course of construction as part of the defendants railway. The work of constructing the viaduct had been let by contract, and the injury which occasioned the death, happened through the carelessness of the contractor's servants, in permitting a large stone to fall on the deceased. By the terms of the contract between the company and the contractor, they had a general right of watching the progress of the work, and if the contractors employed incompetent workmen, the company had the power of dismissing them. The court held that the company were not liable, and in pronouncing judgment, Rolfe, B., said: "Our attention was directed during the argument to the provisions of the contract, whereby the defendants had the power of insisting on the removal of careless or incompetent workmen, and so it was contended they must be responsible for their non-removal. But this power of removal does not seem to us to vary the case. The workman is still the servant of the contractor only, and the fact that the defendants might have insisted on his removal if they thought him careless or unskillful, did not make him their servant." In *State* v. *Williams*, 1 *Vroom* 102, this court held that a landlord did not make himself responsible for the nuisance of his tenant in keeping the house in a disorderly manner by a failure to

avail himself of the power to expel the tenant by summary proceedings for the non-payment of rent, according to the terms of the letting. Indeed, in the ordinary case of the hiring of a coach from a livery, the hirer has the power to terminate the relation between himself and the servant who drives him, at any moment, by relinquishing the journey and ordering the coach back to the owner. That power, though the decision as to whether it shall be exercised or not lies in his own breast, has never been urged as an argument for holding him liable for the negligent acts of the driver, although he may choose to prosecute his journey with an incompetent coachman. The power to discharge in such a case is a power which exists for his own protection, which he is not bound to exercise for the protection of third persons.

The stipulations in the contract between these defendants are of the same nature with the power last adverted to. They were designed for the benefit of the company, to enable them to determine whether the work should be sub-let or not, and to prevent the annoyances and delays incident to disorders fomented by evil-disposed workmen among their fellows, and the loss and injury resulting from insufficient or improper execution of the work. Their office was not to create obligations or duties on the part of the company to third persons. The obligation lies in contract. No stranger can maintain an action on the contract. It does not create the relation of master and servant, nor raise a duty from the non-performance of which an action will enure to third persons.

The principle upon which the superior who has contracted with another, exercising an independent employment for the doing of the work, is exempt from liability for the negligence of the latter in the execution of it, applies as between the contractor and his sub-contractor. *Rapson* v. *Cubitt*, 9 *M. & W.* 710; *Knight* v. *Fox*, 5 *Exch.* 721; *Overton* v. *Freeman*, 11 *C. B.* 867.

The verdict cannot be sustained against any of the defendants on the first ground on which their liability is endeavored

to be supported. It remains to be considered whether they can be held on the other position taken by counsel.

The company did not use the premises, except as they were occupied by the contractors in the execution of the work. They were not then in that actual possession which would raise a liability for acts done upon the property, without regard to the agency by which they were done. They can only be held for what they contracted to have done, and consented that others should do, upon their property.

The consent of the company was that the magazine should be used for the storage of the nitro-glycerine necessary for the operations of blasting on the works. At the time of the accident, there was in the magazine only one can of nitro-glycerine, containing about ten pounds, which belonged to Shaffner, for that purpose. Without the knowledge of the engineer or any officer of the company, or of Flanagan & Sage, Shaffner had stored in the magazine sixteen cans of the oil, which belonged to the United States Blasting Company, and which had been removed clandestinely from the county of Bergen, to avoid an execution about to be issued against that company, and secreted by Shaffner in the magazine, and kept there for sale on the orders of the company. Of these things the defendants were entirely ignorant. On the occasion of the accident, one Merritt came to the premises with an order, signed by a director of the blasting company, for thirty pounds of glycerine. Burns, at that time, had quit the duties of his ordinary employment, and had gone to bed. Nichols, the foreman of Shaffner, waked him up, and directed him to fill the order. In obedience to his command, Burns procured from the magazine a can of the blasting company's oil and an empty can, and carried them a distance of about one hundred and fifty yards, near to the blacksmith's shop, and proceeded to open the can containing the oil. While so doing, the explosion took place, from which the death of the deceased resulted.

In the aspect in which this case has been considered, the liability of the railroad company is fixed, if the injury com-

plained of was the legal result of the nuisance to which they consented. The law cannot undertake to trace back the chain of causes indefinitely, for it is obvious that this would lead to inquiries far beyond human power and wisdom—in fact, infinite in their scope. It therefore stops at the first link in the chain of causation, and looks only to the person who is the proximate cause of the injury. *Shearman & Redfield on Negligence*, § 9. The general rule is, that the damage to be recovered must be the natural and proximate consequence of the act complained of. 2 *Greenl. Ev.*, § 256. "It is not enough if it be the natural consequence: it must be both *natural* and *proximate*." Per Byles. J., in *Richardson* v. *Dunn*, 8 *C. B.*, *N. S.* 665. To maintain an action for special damages, they must be the legal and natural consequences arising from the tort, and not from the wrongful act of a third party remotely induced thereby. *Crain* v. *Petree*, 6 *Hill* 522. It is true that where the injury results from the negligence of several persons, differing only in degree, each will be held responsible for the entire damages resulting therefrom; but where the injury immediately results from the act of one of the parties, the other, though blamable, cannot be held liable for it, unless his conduct is so connected with the act of the former, that it may be said to have been the cause of it. Cases may be stated where the wrongful conduct of one person affords the opportunity or occasion for the illegal act of another, or for an injury from other causes. In such cases the injury is too remote to sustain an action for the recovery of damages. Thus the proprietors of a railroad, who negligently delay the transportation of goods delivered to them, as common carriers, and then transport them safely to their destination, are not responsible for injuries to the goods by a flood, while in their depot at that place, although the goods would not have been exposed to such injury but for the delay. *Denny* v. *The N. Y. Cent. R. R. Co.*, 13 *Gray* 481; *Morrison* v. *Davis*, 20 *Penn.* 171; *Railroad Co.* v. *Reeves*, 10 *Wall.* 176. The gravamen of the complaint is a public nuisance, and to sustain an action for a public nuisance,

the plaintiff must prove an injury therefrom, personal and peculiar to himself, beyond the injury to the public at large, which can only be redressed by indictment. In this respect the action is analogous to actions for words, where special damage is necessary to support the action.

The leading case on this subject is *Vicar* v. *Wilcox*, 8 *East.* 1. The defendant there had charged the plaintiff with cutting his cordage on his rope-walk. The special damages alleged were, that the employer of the plaintiff believing the charge to be true, discharged him, and that the plaintiff afterwards applied to R. P. for employment, who refused to employ him in consequence of the words, and because his former master had discharged him for the offence imputed to him. The plaintiff was non-suited, because the injury was too remote to sustain the action, and the non-suit was sustained by the court in banc.

So far as respects the denial of the plaintiff's right to recover damages for his discharge by his master, if such discharge was caused by the words communicated by the defendant himself to the master, *Vicar* v. *Wilcox* cannot be reconciled with the earlier as well as later authorities; but if the words were communicated to the employer by the unauthorized act of third persons, that case has been completely sustained. See 2 *Smith's L. Cases*, 6th *Am. Ed.* 532, note to *Vicar* v. *Wilcox*; *Lumley* v. *Gye*, 2 *E. & B.* 237, per Whitman, J.; 1 *Starkie on Slander* 205; 2 *Ib.* 64; *Ward* v. *Weeks*, 7 *Bing.*, 211. In the case last cited, it was held that in an action of slander the allegation of special damage could not be supported by proof that the defendant had spoken the words to B., and that damage ensued in consequence of B.'s repeating them as the words of the defendant. In delivering judgment, Tindal, C. J., says : "Every man must be taken to be answerable for the necessary consequence of his own wrongful acts ; but such a spontaneous and unauthorized communication cannot be considered as the necessary consequence of the original uttering of the words. For no effect whatever followed from the first speaking of the words to Bryce ; if he

had kept them to himself, Bryer would still have trusted the plaintiff. It was the repetition of them by Bryce to Bryer, which was the voluntary act of a free agent, over whom the defendant had no control, and for whose acts he is not answerable, that was the immediate cause of the plaintiff's damage.

In *Rich* v. *Basterfield*, 4 *C. B.* 783, the owner of premises built a chimney upon it and leased the premises. The tenant, after he entered, lighted a fire, from the smoke of which the plaintiff was injured in his occupation of adjoining premises, and sued the owner to recover damages, on the ground that having erected the chimney and let the premises with the chimney so erected, he had impliedly authorized the lighting of a fire therein. It was held that the injury resulted from the act of the tenant, and the action would not lie, although, as was said by Cresswell, J., the defendant " enabled the tenant to make fires if he pleased."

In other cases the intervention of the independent act of a third person between the wrong complained of and the injury sustained, which was the immediate cause of the injury, is made a test of that remoteness of damage which forbids its recovery. *Ashley* v. *Harrison*, 1 *Esp.* 48 ; *Mylne* v. *Smith*, 2 *Dow's Parl. Rep.* 390 ; *Fitzsimons* v. *Inglis*, 5 *Taunt.* 534 ; *Hoey* v. *Felton*, 11 *C. B.*, *N. S.* 142 ; *Daniels* v. *Potter*, 4 *C. & P.* 262 ; *Haddan* v. *Lott*, 15 *C. B.* 411 ; *Walker* v. *Goe*, 4 *H. &. N.* 350 ; *Parkins* v. *Scott*, 1 *H. & C.*, 152 ; *Crain* v. *Petrie*, 6 *Hill* 522 ; *Stevens* v. *Hartwell*, 11 *Met.* 542 ; *Toomey* v. *Railway Co.*, 3 *C. B*, *N. S.* 145 ; *Williams* v. *Jones*, 3 *H. & C.* 256 ; *Mangan* v. *Atterton*, *Law Rep.* (1 *Exch.*) 239 ; *Bank of Ireland* v. *Evans*, 5 *H. of L. Cases* 389, 397.

Tested by the principle above stated, it is obvious that the injury received by the deceased, from which death resulted, is too far removed from the act of the company to impose a liability for it upon them. It did not result naturally or proximately from the nuisance they permitted on their lands, but was caused directly by the unauthorized and independent act of a third person intervening between the nuisance they consented to and the injury.

Shaffner had clandestinely applied the magazine to an use for which he had not the permission of the company, and engaged in a business which was not connected with his contract. Permission to use their lands for the limited purpose of storing materials for the execution of the work, did not authorize him to use them for the purpose of engaging in a dangerous traffic, in the prosecution of which the injury resulted. It cannot be insisted, therefore, that the liability of the defendants flows from their consent to the use of their lands for the business in which Burns was employed when the accident happened. The nuisance relied on to fix the defendants, is the storage of nitro-glycerine in the magazine, by their consent. The injury was not caused by an explosion in the magazine. Burns had removed the can from the magazine a distance of one hundred and fifty yards. If he had taken it on the work, to use it in blasting, and, there, persons had been injured by his negligence, the company could not be held for the injuries, notwithstanding their consent to the use and storage of nitro-glycerine on their premises for the prosecution of the work, unless its use in blasting was a nuisance. The disconnection of his act from the nuisance of the storage of the oil, to which the company had consented, is the more apparent when it is considered that the oil, in the management of which the explosion occurred, was kept in the magazine without the knowledge of the company, and that the disaster happened in a business which Shaffner was not authorized to engage in on the company's land. Between his act and their illegal act there was no such connection that the latter can be said to have been the cause of the former.

A places a log in the highway, which B casts into an adjoining close—or puts an obstruction upon the sidewalk, which passers-by throw into the roadway of the street, and a traveler is injured by coming in contact with it: A cannot be held for the trespass in the one case, nor for the injury in the other. Or, to take an illustration more nearly connected with the facts of the case, suppose Burns, by command of Shaffner, had carried the can to Jersey City, and there, by his

negligence, it had exploded and injury had resulted, could an action be maintained against the company for such injuries, based upon an allegation of liability, arising from a nuisance which consisted in the storing of the explosive on their lands at Bergen? If not, it is manifest that the action in this case cannot be supported. That the injury happened on their lands can make no difference, if the business in the prosecution of which it resulted was transacted there by Shaffner, without the authority of the company. If the case had shown that they had consented to the use of their land for the traffic in which Shaffner had engaged, they might have been held for any injury that resulted immediately in connection with the transaction of that business. No such case was made at the trial. The injury was not caused by the nuisance which had the approbation and consent of the company. Their consent was to the erection of a magazine to be used for the limited purpose of storing materials for the necessary operations of their works, in the handling and management of which Burns would have been continually under the observation of others engaged on the works, who would have detected any unfitness for his business arising from intoxication. At most, consent to the erection of the magazine for that purpose can only be said to have afforded an opportunity for the unauthorized act of Shaffner in appropriating it to another use, and the negligent act of Burns, who in law is a stranger to the defendants, and for whose acts Shaffner alone is responsible.

The CHIEF JUSTICE, and Justices WOODHULL and VAN SYCKEL, concurring, the rule is made absolute, and a new trial granted.

Affirmed *post* p. 574.
CITED *in Del. Lack. & West. R. R. Co.* v. *Salmon*, 10 *Vr.* 308.