ROBINSON *v.* BELANGER.

1. APPEAL AND ERROR—CROSS APPEAL—REASONS AND GROUNDS FOR APPEAL.

   The right to file a claim of cross appeal is lost upon failure to file reasons and grounds for appeal (Court Rules Nos 61, § 1, 66, § 3 [1945]).

2. WATERS AND WATERCOURSES—SURFACE WATERS.

   Surface waters are waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence.

3. SAME—SURFACE WATERS—DAMS.

   The natural flowage of surface water from an upper estate is a servitude which the owner of the lower estate must bear, and he cannot hold it back by dikes or dam its natural channels of drainage to the injury of the upper estate.

4. SAME—EMBANKMENTS—SURFACE WATERS.

   Standing water outside of embankment near edge of lake upon defendants' land includes the accumulated flowage of surface water, hence an embankment confining standing lake waters on defendants' land obstructs the normal, natural flow and run-off of surface water from plaintiff's upper adjoining lands.

---

REFERENCES FOR POINTS IN HEADNOTES

[2–4] 56 Am Jur, Waters §§ 65 *et seq.*, 77.

[2–4] Right of riparian owner to embank against flood or overflow from stream. 16 ALR 629; 53 ALR 1180.

Right to drain surface waters into natural watercourse. 28 ALR 1262.

What constitutes natural drainway or watercourse for flow of surface water. 81 ALR 262.

Liability, as regards surface waters, for raising surface level of land. 12 ALR2d 1338.

[7] 56 Am Jur, Waters § 87.

[9] 12 Am Jur, Contempt §§ 26 *et seq.*, 61 *et seq.*; 28 Am Jur, Injunctions § 334.

5. APPEAL AND ERROR—EQUITY—DE NOVO REVIEW—WITNESSES—
VIEW OF PREMISES.

Equity cases are heard *de novo* by the Supreme Court but
great weight is accorded to the findings of fact by the
trial judge who saw and heard the witnesses and inspected
the premises.

6. WATERS AND WATERCOURSES—EMBANKMENT—CULVERT—SURFACE
WATER.

A culvert or cut in an embankment of sufficient size constitutes
a proper relief for plaintiff who sought relief from con-
struction of embankment near edge of lake on the theory
that he was entitled to drainage of his surface waters into
lake which, but for the embankment, extended onto his
land.

7. SAME—EMBANKMENT—DAMAGES—EVIDENCE.

Award of $500 to plaintiff because defendant constructed an
embankment near edge of small lake which had extended
onto plaintiff's land and into which surface waters drained
is not disturbed, where it is shown that water on plaintiff's
land became stagnant, odor of stagnant and slimy water
extended over his property, embankment was unsightly and
destroyed property values and caused fish, in the water
separated from the main body of the lake, to die.

8. INJUNCTION—NOTICE.

A party is bound by an order for injunction of which he has
notice, though no writ is taken out.

9. SAME—CONTEMPT—CONSTRUCTION OF EMBANKMENT.

Sentence for contempt was properly imposed upon defendant
for violation of injunction restraining him from construct-
ing embankment at side of a lake, where the injunction was
served when the embankment was about three fourths com-
pleted but the construction was continued until completion
4 days later, since there was an avowed and contemptuous
ignoring of the injunction.

10. APPEAL AND ERROR—REMAND—MODIFICATION OF DECREE—EM-
BANKMENT—CULVERT.

Cause is remanded for taking of additional testimony in order
to ascertain size and nature of culvert or cut in embankment
necessary to preserve plaintiff's right to drainage of surface
water, where decree ordering removal of entire embankment
is modified to require only a cut in the embankment or a
culvert through it.

Appeal from Oakland; Holland (H. Russel), J. Submitted January 15, 1952. (Docket No. 55, Calendar No. 45,147.) Decided April 7, 1952.

Bill by Arthur E. Robinson against Leroy W. Belanger and wife to enjoin the construction of a dam. Decree for plaintiff. Defendants appeal. Modified and remanded.

*Clifford B. Dye,* for plaintiff.

*Howlett & Hartman,* for defendants.

BUSHNELL, J. Prior to October 14, 1942, defendant Leroy W. Belanger and wife, and Homer D. Kenyon and wife, owned jointly a tract of land in the township of Holly, Oakland county, Michigan. These parties divided their property by executing mutual deeds. Kenyon and wife acquired sole title to the easterly portion, and Belanger and wife obtained sole title to the westerly portion, on which is located a small lake. In August of 1947, plaintiff Arthur E. Robinson became the land contract purchaser of a part of the Kenyon land adjacent to and bounded on the north and west by the Belanger land.

When the parcel was originally divided there were about 150 to 175 feet of dry land between the westerly line of the Kenyon property and the margin of the Belanger lake. The conveyance from Belanger to Kenyon contains a reservation in perpetuity of all riparian rights in and to the waters of the lake lying to the west of the property conveyed.

Several years later the waters of the Belanger lake rose abnormally and spread over its eastern shore and onto a portion of the Kenyon land. Except for seasonal variations the lake level had re-

mained fairly constant for over 40 years. By 1949 the level had risen 3 to 4 feet and the water had extended approximately 30 feet easterly of the westerly boundary of the Robinson and Kenyon properties to a depth of about 18 inches. This abnormal rise was due to the discontinuance of an adjacent railroad water tank pumping station and the construction of a county road along the westerly edge of the lake, which cut off the escape of water therefrom, either by seepage or otherwise.

Robinson testified that the waters of the lake were on his property at the time he purchased from Kenyon; that he kept a boat tied to a tree on his own property; and on 2 occasions was prevented by Belanger from fishing in the main body of the lake.

On June 23, 1948, Belanger began the construction of a dam embankment on his own land, beginning about 50 feet west of the southwest corner of Robinson's land. Before the embankment was completed, Robinson filed a bill seeking equitable relief and obtained a temporary injunction restraining Belanger from—"constructing any embankment or dike which confines the water of the lake hereinafter described from flowing upon the premises of the plaintiff or holds the surface water from flowing from the premises of the plaintiff into the said lake or excludes the plaintiff from the said lake, the said lake being at the west side of the following described property."

This injunction was served upon Belanger when the embankment was about three fourths completed. Belanger, nevertheless, continued his construction, and the embankment was completed 4 days later. The embankment so constructed rises from 4 to 5 feet above the lake level. It entirely separates the

waters of the main body of the lake from those lying on Robinson's land.

An order to show cause was obtained because of Belanger's claimed violation of the temporary injunction, but that matter was held in abeyance until after the trial on the merits.

The trial judge determined that Robinson had no riparian or fishing rights in the main body of the lake west of his westerly boundary line; that the embankment which impounded his waters should be removed within 60 days; that Robinson should have $500 for his "temporary" damages; and that Belanger was guilty of contempt and should show cause why he should not be punished therefor.

A decree in conformity with these findings was entered on May 1, 1950. On May 8th the contempt matter was heard and Belanger was ordered to pay a fine of $250, or in default thereof, to be incarcerated until the same was paid, but not to exceed 15 days. Defendants appealed from the decree and from the sentence for contempt.

Robinson, who had asserted his right "to use the whole lake," filed a claim of cross appeal. He admitted in his brief filed here that he lost his right to do so because of his failure to file reasons and grounds for appeal. See Court Rules Nos 61, § 1, and 66, § 3 (1945); *Dodge* v. *Blood,* 299 Mich 364, 369 (138 ALR 322); and *DesRoches* v. *McCreary,* 315 Mich 611, 617.

Robinson's argument for the removal of the embankment is based upon his contention that the dam obstructs the natural run-off of his surface waters.

"Surface waters are commonly understood to be waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having

no substantial or permanent existence." *Fenmode, Inc.,* v. *Aetna Casualty & Surety Co.,* 303 Mich 188, 192.

"The law is well settled in this State and elsewhere that the natural flowage of surface water from an upper estate is a servitude which the owner of the lower estate must bear, and he cannot hold it back by dikes or dam its natural channels of drainage to the injury of the owner of the upper estate." *Crane* v. *Valley Land Co.,* 203 Mich 353, 359.

We share the difficulty encountered by the trial judge in drawing any distinction between the waters of the lake extending onto Robinson's land and the surface water which flows into the lake. The standing lake waters do not fall within the definition of "surface waters." The present lake level appears to be permanent. Although the standing water is lake water, it also includes the accumulated flowage of surface water. It is apparent, therefore, that the embankment, which confines the water on Robinson's land, does obstruct the normal, natural flow and run-off of surface water from plaintiff's upper land.

Although in equity cases we hear the matter *de novo, Kahn* v. *Friedman,* 329 Mich 164, we should, nevertheless, accord great weight to the findings of fact of the trial judge who not only saw and heard the witnesses, but also inspected the premises. *Browne* v. *Winslow,* 95 Mich 441; *Gillison* v. *Cressman,* 100 Mich 591, 597.

There is competent evidence to support the finding that the embankment interferes with the flow of surface water.

The trial judge ordered the removal of the entire embankment. Belanger contends that placing a drain or culvert in the embankment would be sufficient to remedy the situation which he created. The trial judge observed:

"The mere placing of a culvert under said embankment will not suffice. If the water in that part of the lake which is now on the plaintiff's property is to remain fresh and capable of supporting marine life as it was prior to the building of the embankment, and to be other than a stagnant pool it must be a natural part of the lake as it was prior to the building of the embankment so that the blowing of the wind to and fro may prevent stagnation."

However, plaintiff's theory upon which his claim for relief was based was his right to drainage of his surface water. A culvert or cut in the embankment of sufficient size would provide that relief.

Belanger also claims that Robinson has not suffered any compensable damage by reason of the construction of the embankment. *Reason* v. *Peters,* 148 Mich 532 and *Holcomb* v. *Alpena Power Co.,* 198 Mich 165, and authorities therein cited.

The testimony shows that the water on plaintiff's land became stagnant and that the objectionable odor of stagnant and slimy water extends over his property. Plaintiff's vendor, Kenyon, testified that the embankment was unsightly and destroyed property values. One of plaintiff's witnesses testified that he buried dead fish that were taken from the property after the embankment was built. We are not inclined to disagree with the amount of damages fixed by the trial judge.

Belanger insists that he was not guilty of contempt of court. He argues that the summons in the instant case was served after the injunction. It was held in *Sullings* v. *Goodyear Dental Vulcanite Co.,* 36 Mich 313, that: "In general a party is bound by an order for injunction of which he has notice, though no writ is taken out." He also complains about the fact that the injunction was issued by Judge Hartrick and that Judge Holland found him guilty of contempt after Judge Hartrick had held that "the injunction

is good as of the date of the service of summons."
The record also shows, however, that Judge Hart-
rick had just previously stated that he would not
pass on the claimed violation of the injunction. Bel-
anger, relying on a narrow construction of the lan-
guage of the temporary injunction, argues that he
did not violate any of its prohibitions.

The intent of the injunction and the situation
sought to be controlled thereby must have been equal-
ly clear to all the parties. There is no question but
that Belanger avowedly and contemptuously ignored
the mandate of the injunction. We therefore hold
that the sentence imposed upon him for such viola-
tion was proper.

In the light of our determination, it may be neces-
sary to take additional testimony in order to ascer-
tain the size and nature of the culvert or cut in the
embankment, required to preserve Robinson's right
to drainage of his surface water.

The cause, therefore, is remanded to the circuit
court for such purpose and for an entry of a modi-
fied decree in the light of this opinion and for the
further enforcement thereof. Costs in both courts
to plaintiff.

North, C. J., and Dethmers, Butzel, Carr,
Sharpe, Boyles, and Reid, JJ., concurred.