81 So.2d 324

**BARBER PURE MILK COMPANY**

v.

**Willie YOUNG.**

**6 Div. 747**

Court of Appeals of Alabama.

Jan. 5, 1954.

Rehearing Denied Feb. 16, 1954.

Abele & Witcher, Birmingham, for appellee.

Sadler & Sadler, Birmingham, for appellant.

HARWOOD, Judge.

The count upon which this case was submitted to the jury claimed damages for the negligence of the defendant in causing water to flow onto plaintiff's property thereby injuring certain articles of personal property and the dwelling which he occupied.

Demurrers to the complaint being overruled issue was joined on a plea in short by consent.

The jury returned a verdict in favor of the plaintiff, and assessed damages in the sum of $500.00.

The defendant's motion for a new trial being overruled it perfected an appeal to this court.

The appellant, the Barber Pure Milk Company, a corporation, owned a tract of land in the City of Birmingham approximately two city blocks in area.

Over the tract of land there coursed what is referred to by witnesses variously as a

creek, branch, or ditch. This channel followed a meandering, irregular course over the tract, leaving the property at the northeast corner. From there the water was routed under Avenue F by a culvert, then continued on northward.

In December 1949, at appellant's request, Mr. Walter Schoel, a civil engineer of some thirty years experience, made a map for the purpose of constructing a new ditch or canal to effectuate a new channel to run down the east side of the property, and thus reclaim a part of the property from the old water course.

Mr. Schoel submitted his proposed plans for the relocation of the water course on appellant's property to the engineering department of the City of Birmingham, and the plans were approved by that department.

Thereafter the new ditch was dug in accordance with said plans by Mr. C. L. Brock, an independent contractor. This new ditch was channeled to throw the water into the culvert as had the old water course.

Several weeks after the new ditch was constructed a hard rain fell.

According to witnesses for the appellee mud and silt from the new ditch clogged the culvert under Avenue F, thus causing the water to back up and overflow onto appellee's premises. The water rose seven inches in appellee's house, and left a mud deposit of about an inch when it receded.

Carrad Slater, a witness for the appellee, testified that he lived in "the third house from" appellee's house; that on the occasion of the overflow the water rose into his house to a depth of 13 inches; and that there had never been an overflow onto his premises during the nine years he had lived there until after the new ditch was dug.

The appellee also testified in this regard that his premises had never been overflowed in the fifteen years he had lived there until after the construction of the new ditch.

Mr. Schoel, as a witness for the defense, testified that he could not say yes or no as to whether the capacity of the new ditch was equal to that of the old, as in making such calculations "we have a theoretical way we do things that involves quite a lot of theory."

The record also shows the following during the direct examination of Mr. Schoel:

"Q. As a result of those theories and those calculations, did you come to the conclusion that the canal which was being dug was of equal capacity or more than the capacity of this irregular ditch that ran out there? A. Well, of course, we had a straight ditch, of course, that increases your velocity, and naturally you dispose of more water, and that way we considered an element in our favor, and it would naturally be against any ditch that was not running straight, and the water was confined to a certain area. If you spread it over a whole territory like this old ditch, you are not getting results."

Mr. Brock, a witness for appellant, testified that he had been in excavation work since 1947; that he dug the ditch in question using a bulldozer and a pan; that he followed the specifications of the plan furnished him, and the new ditch was wider and deeper than the old one.

On cross examination Mr. Brock testified that the sides of the new ditch were not reinforced in any way, it was just a new ditch to the culvert.

Mr. Brock testified that there was some debris and dirt in the culvert at the time he dug the new ditch.

Appellant's assignments of error 1, 2, 3, 4, and 5 pertain to the action of the court in denying appellant's written request for the general affirmative charge.

Counsel for appellant contends that this charge should have been given on two theories: 1., because of the failure of proof of negligence on the part of the defend-

ant, or on the part of Mr. Schoel, the engineer, or of Mr. Brock, the contractor, and 2., because the entire project of re-routing the ditch was carried out by independent contractors, for whose negligence, if any, the appellant is not responsible.

■ In considering the principles applicable we think that under the evidence those principles governing diversion streams, rather than surface waters must be controlling. As stated before, the old meandering water course was referred to by witnesses variously as a branch, a creek, or a ditch. The record is silent as to the continuity of its flow, though it appears that its source was a lake on the golf course of the Highland Country Club, as well as waters "from the top of Red Mountain, and other additional tributaries." Certainly the waters of the old stream were channeled in well defined banks, and fed by sources other than rain fall.

■ On the other hand surface water is water casually on land from natural precipitations and flowing in no fixed channel.

Actually, whether the water in this case be considered as surface water or as a stream makes little difference in the results reached, for as pointed out by Mayfield, J., in Southern Railway Co. v. Lewis, 165 Ala. 555, 51 So. 746, 749:

"The rights and duties of adjoining landowners as to surface water and the drainage thereof are different from the rights and duties as to streams of water flowing through their lands, as to which streams they are riparian owners. However, some of the same maxims apply to both cases, and upon these most all the law of waters is said to be based, to wit: (1) 'So use your own property as not thereby to injure that of another.' (2) 'Water flows, and as it flows, so it ought to flow.'"

■ Obstructing the flow of waters, so as to divert its natural flow and thereby work injury to the properties of another will, if the obstructions result from negligence, constitute a tort in the nature of a private nuisance. Mobile & O. R. Co. v. Red Feather Coal Co., 218 Ala. 582, 119 So. 606.

■ As to whether the appellant should reasonably have foreseen that substituting a straight channel with freshly dug and unprotected banks, in lieu of a meandering long existent channel, with a consequent increase in the velocity of the water so concentrated, and with a natural increase in the mud, silt, and debris carried, would result in clogging the culvert into which both the old and the substituted channel were connected, was a question of fact properly submitted to the jury.

The court therefore did not err in its refusal of the general affirmative charge requested by the appellant.

■ The second theory upon which counsel for appellant urges that the court erred in its refusal of appellant's request for the general affirmative charge, i. e., that the entire project of relocating the ditch was carried out by independent contractors, is also without merit, as the following excerpt from Southern Railway Co. v. Lewis, supra, demonstrates:

"The first assignment insisted upon is that the defendant is not liable in this action, because the excavation directing the waters was done by the defendant's independent contractor, and not by it, its agents, or servants. True, the law is, as is insisted by counsel for appellant, that a master, principal, owner, or operator is not liable for the negligence of his independent contractor, and is not so liable though he may direct, control, and approve the work which is negligently done; but it is equally well-settled law that if the work contracted to be done is of itself hazardous or will, in its progress, however skillfully done, be necessarily or intrinsically dangerous, or liable to result in injury to another, or if the law imposes on the master or owner the duty to keep the subject of the work in a safe condition, the owner or contractor is liable, the same as

if he performs it himself. Wood on Master & Servant (2d Ed.) p. 603; Cuff's Case [Cuff's Adm'rs v. Newark & N. Y. R. R.], 35 N.J.L. 17, 10 Am. Rep. 205; McCary's Case [Mayor, etc., of Birmingham v. McCary,], 84 Ala. 472, 4 So. 630, in which the above and many other authorities are cited. If the work to be done by the contractor cannot be done without danger or injury to third parties, if its very nature and existence is such as to cause or produce danger or injury, the owner, master, or contractor is liable as if he performs it himself. If the work is not necessarily dangerous, and will not, if properly executed, result in danger or injury to third parties, but is rendered so only by the negligent manner in which it is performed, then the owner, master, or operator is not liable, but only the independent contractor. In this case there is no allegation or claim that the work was negligently done. It was the doing of the work in any manner that was alleged to have constituted the wrong. Probably the better it was done the greater was the wrong or injury to the plaintiff. There was no attempt on the part of either party to show that the work was negligently done, or was done in a manner not contemplated, ordered, and directed by the defendant. Hence, as to this action, it was immaterial that the work was done by the defendant's contractor."

Assignments of error 6 and 7 assert as error the action of the trial court in refusing appellant's motion for a new trial on the grounds that the verdict was contrary to the great weight, and the great preponderance of the evidence.

There being evidence, and reasonable inferences therefrom, tending to support the plaintiff's right to recover, we find no basis to justify our disturbing the trial court's conclusions in this regard.

Appellant's assignment of error number 8 pertains to the trial court's refusal of its requested charge number 8.

This charge sets forth an abstract principle of law without informing the jury of what elements certain general terms employed in the charge consist. In addition the principle sought to be enunciated in the charge was adequately covered in the court's oral charge, and in a clearer fashion. No error can therefore be predicated upon this assignment.

Affirmed.