**Richard HELLER and Rosemary Heller, Petitioners,**

v.

**FIRE INSURANCE EXCHANGE, A DIVISION OF FARMERS INSURANCE GROUP, Respondent.**

**No. 89SC320.**

Supreme Court of Colorado, En Banc.

Nov. 13, 1990.

Galchinsky and Siverstein, Elizabeth K. Tulloch, Herbert H. Galchinsky, Denver, for petitioners.

Hall and Evans, Alan Epstein, Denver, for respondent.

Chief Justice ROVIRA delivered the Opinion of the Court.

Richard and Rosemary Heller petitioned for certiorari review of *Heller v. Fire Insurance Exchange*, No. 87CA1045 (Colo. App.1989) (unpublished), which reversed the judgment of the trial court entered on a jury verdict. In *Heller*, the court of appeals held that the damage to the Heller property was caused by surface water which was excluded from coverage by their insurance policy. We granted certiorari to consider this issue. We reverse.

## I

The Hellers owned a house located near the base of a mountain in Vail, Colorado. In May 1984, the Hellers discovered that water from spring runoffs of melted snow had caused extensive damage to their property. The regular path of the water had been diverted onto the Hellers' property by three parallel trenches constructed behind their property by an unknown person, or persons. The trenches were fifteen to twenty feet long, three feet wide, six inches deep, and lined with plastic sheets, rocks and tree limbs. The property had never been affected before by spring runoffs during the Hellers' ten-year occupancy.

Earlier in 1984, the Hellers had purchased an all-risk[1] insurance policy covering the house from the Fire Insurance Exchange, a division of Farmer's Insurance Group (Insurer). The policy excluded from coverage any loss resulting from "water damage," which was defined in part as "flood, surface water, waves, tidal water,

---

1. In an 'all-risk' policy, all losses except those specifically excluded are covered. Katofsky, *Subsiding Away: Can California Homeowners* *Recover from Their Insurer for Subsidence Damages to Their Homes?*, 20 Pac.L.J. 783, 785 (1989).

overflow of a body of water, or spray from any of these, whether driven by wind or not." [2]

The Hellers filed a claim for losses of $25,000 that the Insurer denied based on the water-damage exclusionary clause. The Hellers then sued the Insurer, seeking coverage under the policy.

The Insurer filed a motion for summary judgment asserting that the policy clearly and unambiguously excluded the damage to the Hellers' property because it was caused by surface water. The trial court denied the motion, and the case was tried to a jury. After the Hellers presented their evidence, the Insurer moved for a directed verdict, arguing, *inter alia,* that the water-damage exclusion prohibited any recovery. The motion was denied and the jury returned a verdict in favor of the Hellers.

The court of appeals reversed the judgment, holding that the water which caused damage to the Hellers' property was surface water, and that the policy exclusion for surface water damage was applicable notwithstanding that the intentional or negligent acts of a third party caused the water to run onto the Hellers' property.

2. The policy states:

> We do not cover direct or indirect loss from:
> . . . .
> 3. Water damage, meaning:
> a. flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether driven by wind or not.
> b. water which backs up through sewers or drains.
> c. water below ground level, including water which exerts pressure on or flows, seeps or leaks through any part of a building or other structure, sidewalk, driveway, foundation, or swimming pool.

3. *Ferndale Dev. Co. v. Great Am. Ins. Co.,* 34 Colo.App. 258, 260, 527 P.2d 939, 940 (1974); *Gray v. Reclamation Dist. No. 1500,* 174 Cal. 622, 649–51, 163 P. 1024, 1036 (1917); *Aetna Ins. Co. v. Walker,* 98 Ga.App. 456, 459–60, 105 S.E.2d 917, 920 (1958); *Block v. Franzen,* 163 Neb. 270, 276–78, 79 N.W.2d 446, 450 (1956); *Skinner v. Silver,* 158 Or. 81, 98–100, 75 P.2d 21, 28 (1938); *Sun Underwriters Ins. Co. v. Bunkley,* 233 S.W.2d 153, 155 (Tex.Civ.App.1950); *Restate-*

## II

The Hellers argue that there was coverage under the insurance policy because the term "surface water" is ambiguous and ambiguities are construed against the Insurer. They also contend that the water that damaged their property was not "surface water" under the "customary meaning" of the term. We disagree that the term "surface water" is ambiguous, but agree that the water which damaged the Hellers' property was not "surface water."

## A

■ To ascertain whether certain provisions of an agreement are ambiguous, the language used must be examined and construed in harmony with the plain, popular, and generally accepted meaning of the words employed and with reference to all provisions of the document. *See Florom v. Elliott Mfg.,* 867 F.2d 570, 575 (10th Cir. 1989); *Christmas v. Cooley,* 158 Colo. 297, 301, 406 P.2d 333, 336 (1965); *Ray L. Atchison Constr. Co. v. Sossaman,* 717 P.2d 988, 989 (Colo.App.1985).

■ Surface water is water from melted snow, falling rain, or rising springs,[3] lying or flowing naturally on the earth's surface,[4] not gathering into or forming any more definite body of water than a mere bog, swamp, slough, or marsh,[5] and lost by

*ment of Torts* § 846 (1939); *cf. Keener v. Sharp,* 341 Mo. 1192, 111 S.W.2d 118 (1937) (surface water, from whatever source it may spring, is water that is separated from waters of a natural body of water, such as a lake or river).

4. *Enderson v. Kelehan,* 226 Minn. 163, 165–67, 32 N.W.2d 286, 288 (1948); *Block,* 163 Neb. at 276–78, 79 N.W.2d at 450; *Case v. Hoffman,* 84 Wis. 438, 444–45, 54 N.W. 793, 795 (1893); *Restatement of Torts; see also Capes v. Barger,* 123 Ind.App. 212, 213–15, 109 N.E.2d 725, 726 (1953); *Standley v. Atchison,* 121 Mo.App. 537, 546–47, 97 S.W. 244, 247 (1906); *McCausland v. Jarrell,* 136 W.Va. 569, 579–81, 68 S.E.2d 729, 737 (1952).

5. *Weck v. Los Angeles Flood Control Dist.,* 80 Cal.App.2d 182, 192–194, 181 P.2d 935, 942 (1947); *Walker,* 98 Ga.App. at 459–60, 105 S.E.2d at 920; *Enderson,* 226 Minn. at 165–67, 32 N.W.2d at 288; *Hartle v. Neighbauer,* 142 Minn. 438, 440–41, 172 N.W. 498, 499 (1919); *Skinner,* 158 Or. at 98–100, 75 P.2d at 28; *Hoffman,* 84 Wis. at 444–45, 54 N.W. at 795; *Black's Law Dictionary* 1427 (5th ed.1979) (citing *State*

percolation, evaporation or natural drainage.[6] Surface water is distinguished from the water of a natural stream, lake, or pond,[7] is not of a substantial or permanent existence,[8] has no banks,[9] and follows no defined course or channel.[10]

The term "surface water" is not ambiguous merely because it is undefined in the policy. Its meaning can be ascertained by looking at the common definitions accepted by courts and secondary sources. Although the definitions vary slightly in language, together they establish a comprehensible definition for the term "surface water."

When construing the term "surface water," as used in the insurance policy, in harmony with the generally accepted meaning of the term and with reference to all provisions in the policy, we find that it is not ambiguous.

### B

 Where there is no ambiguity, the agreement will be enforced according to the express provisions of the contract, giving words their plain and generally accepted meaning. *See Public Serv. Co. v. City and County of Denver*, 153 Colo. 396, 403, 387 P.2d 33, 36 (1963); *U.S. Fidelity & Guar. Co. v. First Nat'l Bank of Fort Morgan*, 147 Colo. 446, 450, 364 P.2d 202, 205 (Colo.1961). The express terms of the policy provide for coverage unless the damage was caused by "surface water." The water that damaged the Hellers' property does not fit within the generally accepted meaning of "surface water," and so will be construed in favor of coverage. *See, e.g., Christmas v. Cooley*, 158 Colo. 297, 302, 406 P.2d 333, 336 (1965) (a contract is to be construed most strongly against the drafter).

Here, the water originated from natural runoff of melted snow, but was diverted into man-made trenches that were fifteen to twenty feet long and six inches deep. The trenches diverted the regular path of the melted snow over a natural ridge. These trenches were "defined channels" that diverted the regular flow of the water, preventing "percolation, evaporation, or natural drainage." In examining the characteristics of the water that damaged the Hellers' property, we conclude that the runoff lost its character as surface water when it was diverted by the trenches and therefore was not within the surface water exclusion contained in the Hellers' policy.

Accordingly, the judgment of the court of appeals is reversed and the case remanded to that court with directions to reinstate the judgment of the trial court.

ERICKSON, J., specially concurs.

VOLLACK, J., does not participate.

**6.** *Ferndale*, 34 Colo.App. at 260, 527 P.2d at 940; *Taylor v. Conti*, 149 Conn. 174, 177–79, 177 A.2d 670, 672 (1962); *Fenmode, Inc. v. Aetna Casualty & Surety Co.*, 303 Mich. 188, 192–93, 6 N.W.2d 479, 481 (1942); *Skinner*, 158 Or. at 98–100, 75 P.2d at 28; *Thompson v. Andrews*, 39 S.D. 477, 488–89, 165 N.W. 9, 13 (1917); *Bunkley*, 233 S.W.2d at 155.

**7.** *Hunt v. Smith*, 238 Iowa 543, 553–55, 28 N.W.2d 213, 218 (1947); *Black's Law Dictionary* 1427 (citing *Hiber*, 48 Wyo. at 180–82, 44 P.2d at 1008; *see also Sharp*, 341 Mo. at 195, 111 S.W.2d at 120; *Block*, 163 Neb. at 276–78, 79 N.W.2d at 450.

**8.** *Thompson v. New Haven Water Co.*, 86 Conn. 597, 603–05, 86 A. 585, 588 (1913); *Capes*, 123 Ind.App. at 213–15, 109 N.E.2d at 726; *Hunt*, 238 Iowa at 553–55, 28 N.W.2d at 218; *Poole v. Sun Underwriters Ins. Co.*, 65 S.D. 422, 425–26, 274 N.W. 658, 660 (1937); *Riggs Oil Co. v. Gray*, 46 Wyo. 504, 511–513, 30 P.2d 145, 147 (1934).

**9.** *Urse v. Maryland Casualty Co.*, 58 F.Supp. 897, 899 (D.W.Va.1945); *Capes*, 123 Ind.App. at 213–15, 109 N.E.2d at 726; *McCausland*, 136 W.Va. at 579–81, 68 S.E.2d at 737; *see also Vollrath v. Wabash R.R. Co.*, 65 F.Supp. 766, 772 (D.Mo. 1946); *Keener*, 341 Mo. at 195, 111 S.W.2d at 120; *Harvey v. Northern Pac. R.R. Co.*, 63 Wash. 669, 673–4, 116 P. 464, 466 (1911).

**10.** *Ferndale*, 34 Colo.App. at 260, 527 P.2d at 940; *Barber Pure Milk Co. v. Young*, 38 Ala.App. 13, 16, 81 So.2d 324, 327 (1954); *Gray*, 174 Cal. at 649–51, 163 P. at 1036; *New Haven Water Co.*, 86 Conn. at 603–05, 86 A. at 588; *Tampa Waterworks Co. v. Cline*, 37 Fla. 586, 593–4, 20 So. 780, 782 (1896); *Walker*, 98 Ga.App. at 459–60, 105 S.E.2d at 920; *Birdwell v. Moore*, 439 N.E.2d 718, 721 (Ind.App.1982); *Hunt*, 238 Iowa at 553–55, 28 N.W.2d at 218; *Robinson v. Belanger*, 332 Mich. 657, 661–63, 52 N.W.2d 538, 541 (1952); *Schomberg v. Kuther*, 153 Neb. 413, 427–28, 45 N.W.2d 129, 137 (1950); *Skinner*, 158 Or. at 98–100, 75 P.2d at 28; *Howlett v. City of South Norfolk*, 193 Va. 564, 567–68, 69 S.E.2d 346, 348 (1952); *Black's Law Dictionary* 1427 (citing *Hiber*, 48 Wyo. at 180–82, 44 P.2d at 1008).

*v. Hiber*, 48 Wyo. 172, 180–82, 44 P.2d 1005, 1008 (1935)).

ERICKSON, Justice, specially concurring:

The term surface water, as used in the insurance policy issued to the Hellers by Fire Insurance Exchange, is ambiguous and undefined in the policy. The definition of surface water should therefore be construed against the insurer. *Kane v. Royal Ins. Co. of Am.*, 768 P.2d 678, 680 (Colo. 1989); *Republic Ins. Co. v. Jernigan*, 753 P.2d 229, 232 (Colo.1988). This court need not and should not adopt the varied and differing definitions offered in *Ferndale Development Co. v. Great American Ins.*, 34 Colo.App. 258, 260, 527 P.2d 939, 940 (1974), and the other cases cited in the footnotes in the majority opinion.