[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action by the plaintiff, Michael Montanaro, against the defendant, Nationwide Insurance Company in two counts.
Count One is a claim for money damages by the plaintiff for certain damage and loss to his property located at 4083 Main Street in Bridgeport.
Count Two is a claim for money damages and other relief for the alleged violation by the defendant of the Connecticut Unfair Insurance Practices Act (CUIPA) and the Connecticut Unfair Trade Practices Act (CUTPA). Count Two was stricken from the complaint by order of this court (Rush, J.) on March 12, 2001 and is no longer part of the case before the court.
In Count One the plaintiff alleges that on or about September 1, 2000,[1] the aforementioned property sustained great water damage from a storm and that he owned a policy of insurance issued by the defendant insuring him against such losses. He further alleged that despite its obligation to do so, the defendant has failed to pay him pursuant to said insurance policy for such damage and loss after proper demand.
In its answer to the plaintiff's complaint, the defendant admitted that on or about said date while such policy was in full force and effect, a storm caused water damage to the plaintiff's property and that it has not paid the plaintiff for his claimed loss. The defendant denied the plaintiff's allegation that he had performed all the conditions on his part pursuant to the policy including the allegation that he had given the defendant proof of loss. It also denied the allegation that the reasonable cost of repair was $100,000.00.
In addition, the defendant pled four special defenses to the allegations in the complaint: CT Page 2905-bg
First — that the loss complained of was caused by a flood and is excluded from coverage under Section B, Item g of the policy;
Second — that the plaintiff failed to protect the property from further damage and or make repairs as required by the policy;
Third — that the plaintiff failed to mitigate or otherwise ameliorate the effects of any damage to the property despite the opportunity and obligation to do so; and
Fourth — that the plaintiff has already been paid for such damage by the National Flood Insurance Program issued through FEMA.
The plaintiff denied the special defenses in his reply and issue was joined.
The parties appeared before the court for trial and offered evidence and testimony. The court then reserved decision.
In the instant case, the plaintiff maintains that the water damage to his property was caused by water which was caused to back up from the Ox Brook, a stream which passes in close proximity to the property, onto his parking lot and eventually into his building. More specifically, he claims that the water came from a clog in an underground pipe which carries the Ox Brook, which clog caused the water to back up through storm grates and otherwise and to find its way into the lower elevations of his office building. The plaintiff offered no evidence of a clog existent in said pipes on the date of the incident.
The defendant-insurer maintains that the plaintiff's property was damaged by "surface water" which "flooded" the property as a result of the storm, directly from the sky and/or as overflow from the Ox Brook.
The critical distinction between the parties' respective claims is the fact that the policy of insurance contains an express exclusion of coverage for water damage caused by a "flood" (which includes "surface water" and "overflow of any body of water"), but no exclusion of coverage[2] if the water damage is caused by a "back up" (of water from a sewer or drain). The plaintiff claims it was such a back-up and the defendant claims it was a flood. The parties each offered expert testimony to help the court determine that issue.
The evidence and testimony permit the court to make the following CT Page 2905-bh findings of fact.
The following allegations of the plaintiff, having been admitted by the defendant, are found to be proven.
On or about September 2, 2000, while a policy of property insurance issued to the plaintiff by the defendant was in full force and effect for the plaintiff's property (the property) situated at 4083 Main Street in Bridgeport, a storm (the storm) caused water damage to the property. The claim made by the plaintiff to the defendant for payment of such damage and loss has not been paid by the defendant.
The plaintiff's property at 4083 Main Street is a commercial office building and parking lot. The building had at one time been a church and was converted for office use. The first floor of the building is reported to be 4.25 feet below the base flood elevation. The property is located in a flood zone and the plaintiff was required to and did maintain flood insurance with National Flood Insurance Company (NFIC).
The property is located in a 10 year flood zone, meaning that, on average, properties in that zone are likely to flood every 10 years.
As a result of the damage sustained to the property from the storm the plaintiff made a claim for damages sustained to the property and received approximately $51,200.00 from the National Flood Insurance Company (NFIC).
As part of the claim for damages made pursuant to his NFIC policy, the plaintiff signed a proof of loss, under oath, attesting to the fact that the water damage was caused by a "flood" from a "3" rain storm" (Plaintiff's Ex. 2).
The policy of the defendant, Nationwide Insurance, excludes coverage for ". . . loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other causeor event that contributes concurrently or in any sequence to the loss. (Emp. added.)
 G. Water
(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not."
(Plaintiff's Ex. 1.) CT Page 2905-bi
The plaintiff testified that he had specifically contracted with the defendant to add an endorsement to the policy which provided, "The following exclusion is deleted from Section B. Exclusions: B.1.g. (3) Water that backs up from a sewer or drain." (Plaintiff's Ex. 1.)
As noted, the plaintiff has maintained that the water which entered his building was water which was caused to back up from an underground pipe which is a conduit for the Ox Brook in that section of Bridgeport. While he offered testimony about the permanent size and configuration of the said pipe, he offered no competent testimony of a blockage existent in the pipe on September 2, 2000, the date of the incident.
The evidence permits the court to further find that a rainstorm occurred on that same date and that the precipitation from that storm contributed to the volume of water attempting to pass through the Ox Brook. Estimates of the amount of precipitation vary from .44 inches to the "3-inch rain storm" representation of the plaintiff (as previously cited in plaintiff's flood insurance proof of loss affidavit. (Plaintiff's Ex. 2.)
The defendant argues that even if it were to be inferred from the weather conditions, amount of precipitation, topography and the sewer system that the Ox Brook backed up onto the plaintiff's parking lot, that in and of itself, would not obligate the defendant to compensate the plaintiff for any damages which may have resulted. The defendant maintains that such water, even water which may have backed up from the Ox Brook pipe onto the plaintiff's parking lot, is properly defined as surface water and that any damage from surface water is not covered by the policy. In support of that position, the defendant cites Casey v. GeneralAccident Insurance Company, 578 N.Y.S.2d 337 (1991) and Hirschfield et alv. Continental Casualty, 405 S.E.2d 737 (Ga. 1991). Both cases deal with facts very similar to the instant case, including the operative language in the insurance policies.
In Hirschfield, the court considered the claim of the plaintiff for water damage to the basement of his home caused by water from a ground storm drain. In that case there was evidence and testimony that after a rainstorm, rainwater flowed or rose from the area of the grate, across the surface and eventually entered a vent leading to the plaintiff's basement. The plaintiff presented evidence that a blockage in the underground drain caused rainwater, which had previously entered the drain at an upstream location, to be diverted upward through the grate and eventually across the surface area into the basement. The defendants presented evidence that the storm drain has become clogged with debris and CT Page 2905-bj was unable to take the rainwater away, so that the water level around the grate rose to a point where the rainwater flowed across the surface into the basement. Id., p. 738.
Also, in that case the plaintiff had procured a policy of insurance which provided coverage for losses caused by water which backs up through sewers or drains — except for losses excluded elsewhere in the policy. The policy further contained a provision excluding property damage from water damage caused by "Flood surface water, waves, tidal water, overflow of a body of water or spray from any of these, whether or not driven by wind." Id.
The court, citing Aetna Ins. Co. v. Walker, 98 Ga. App. 456, 459-60,105 S.E.2d 917 (1958), then defined surface water as follows: "Surface water is water which is derived from falling rain or melting snow . . . and is diffused over the surface of the ground, while it remains in such diffused state, and which follows no defined course or channel, which does not gather into or form a natural body of water, and is lost by evaporation, percolation, or natural drainage."
The court went on to find, "Whether in the present case the rainwater was diverted from the storm drain to the surface by an underground blockage, or it accumulated near the grate because the drain was otherwise obstructed, it is undisputed that the rainwater then flowed from the adjacent grate, across a surface area, and into the basement. Under these facts, the water entering the basement fits squarely within the `surface water' exclusion of the policy. Id. Even if the insuring provision for `water which backs up through sewers and drains' might arguably apply to rainwater backing up to the surface through the storm drain, the `surface water' exclusion clearly and explicitly excludes coverage under the present circumstances."
Id., p. 739.
In Casey, when considering issues identical to those in the instant case, including a policy exclusion provision of "surface water" which is almost verbatim with the exclusionary language in the instant policy, the court held that . . . "all of the terms utilized in this exclusionary clause relate to natural phenomena."
In Casey, the facts were somewhat different than in the instant case there was evidence and testimony that the water, at least some of it, backed up from a pipe which was located somewhere other than the plaintiff's premises, specifically, the Ox Brook underground conduit, and that through a system of pipes and drains it backed up onto the CT Page 2905-bk plaintiff's parking lot. In Casey, rainwater fell directly onto the plaintiff's property and did not properly exit through a drain, but rather ran into his basement. The critical holding in Casey which is relevant in this case is that the damaging water was defined as "surface water." The court noted, "The fact that other factors, such as a clogged drain . . . may have contributed to the loss is of no consequence under the language of the policy. While the clogged drain certainly contributed to the loss, the actual cause of the loss was the presence of surface water. Since the policy expressly excluded loss `caused directly or indirectly' by surface water regardless of any other cause or event contributing concurrently or in any sequence to the loss," the exclusion was found by the court to be applicable as a matter of law. See Casey, supra, p. 338.
This court likewise finds that the water which entered the plaintiff's building was "surface water," as that term is defined in the policy and in case law.
For the foregoing reasons, the court finds that the defendant-insurer was not obligated under the terms of the insurance policy to compensate the plaintiff for any damages which he alleged to have occurred as a result of water entering and damaging his building on the date of the incident.
Having made that finding, the court does not reach or consider the issues of whether the plaintiff did all that was required of him to mitigate his damages or to present a proper damage claim to the defendant, or whether the plaintiff suffered any damages for which he was not previously compensated.
Judgment is hereby entered for the defendant and against the plaintiff.
 By the Court, Joseph W. Doherty, Judge