## A04A1172. SELECTIVE WAY INSURANCE COMPANY v. LITIGATION TECHNOLOGY, INC.
### (606 SE2d 68)

ELDRIDGE, Judge.

    Litigation Technology, Inc. ("Litigation Technology") sued its insurer, Selective Way Insurance Company ("Selective Way"), for breach of an insurance contract and bad faith refusal to pay a claim. Selective Way moved for summary judgment, asserting that Litigation Technology's insurance policy's "surface water" exclusion barred the claim. The trial court denied Selective Way's motion and granted summary judgment to Litigation Technology on the breach of contract claim. With respect to bad faith refusal to pay, the trial court concluded that factual questions remain for resolution by a jury. Selective Way appeals and, for the reasons that follow, we affirm.

    1. Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[1] Many of the facts in this case are undisputed. Litigation Technology leased office space in the basement of a building on Spring Street in Atlanta and insured that space through a policy issued by Selective Way. In February 2000, sewage began overflowing through the plumbing in Litigation Technology's basement offices, and the City of Atlanta investigated to determine the cause.

    During the investigation, the City dug a large, 13-foot-deep pit beneath the surface of the ground under Spring Street, immediately adjacent to Litigation Technology's building. Inside the pit, a pipe was uncovered which extended under the street and sidewalk into Litigation Technology's basement wall, two feet above the floor. The pipe

---

[1] OCGA § 9-11-56 (c).

was capped inside the basement, but a City worker removed the cap as part of the investigation. Following excavation, the pit was covered with a steel plate.

On April 1 and 2, 2000, Atlanta experienced heavy rains. As a result, rainwater ran down Spring Street, seeped under the metal plate, and gathered into the City's excavated pit. The water that pooled in the pit rose sufficiently to enter the uncapped pipe; it flowed through the pipe under the street and sidewalk, and discharged into Litigation Technology's office space, causing water damage. Sewage also entered with the water.

Litigation Technology filed a claim under its insurance policy for the water damage. Selective Way initially stated that it would cover the claim and did not contest it until Litigation Technology filed suit, over 18 months after the damage. Thereafter, Selective Way informed Litigation Technology that the insurance policy's "surface water" exclusion barred the claim. That exclusion provides:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. . . .
>
> g. Water
>
> (1) Flood, *surface water*, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not.

(Emphasis supplied.)

In its motion for summary judgment, Selective Way argued that the damage incurred by Litigation Technology resulted "directly or indirectly" from rain falling on the surface of the ground thereby placing the insurance claim within the "surface water" exclusion of the policy. The trial court denied the motion, finding that the policy covered Litigation Technology's claim as a matter of law. *Held*:

"The construction of an insurance contract is a question of law for the court," and a court must enforce an unambiguous insurance policy as written.[2] Here, the policy does not define the term "surface water"; however, under the "widely accepted definition," such term means:

---

[2] *Hirschfield v. Continental Cas. Co.*, 199 Ga. App. 654, 655 (405 SE2d 737) (1991).

water which is derived from falling rain or melting snow, or which rises to the surface in springs, *and is diffused over the surface of the ground, while it remains in such diffused state*, and which follows no defined course or channel, which does not gather into or form a natural body of water, and which is lost by evaporation, percolation, or natural drainage.[3]

While Selective Way argues that the water which caused the damage in this case began as falling rain and thus the surface water exclusion applies, we do not find this argument persuasive; under a definitional umbrella that broad, most water could be considered "surface water." Further, the exclusion's "direct or indirect" language does not permit Selective Way's construction involving damage caused by "indirect" surface water; for the exclusion to apply, the damage — whether caused directly, indirectly, or in conjunction with other factors — must still be caused by what can be defined as "surface water" at the time the damage is sustained. So, the issue here is whether falling rain loses its character as diffused "surface water" when it gathers into a 13-foot-deep underground hole, enters into a sewer pipe, and flows through the pipe under a sidewalk and into a building. In that regard, as the trial court correctly determined, this case is controlled by *Aetna Fire Underwriters Ins. Co. v. Crawley*.[4]

If my immediate drain pipe is clogged by grease, or the sewer line leading from my house is choked with roots, so that water discharged from my house is not properly carried away, the exclusion may well apply. But this water did not *back up* from the plaintiff's sewer or drains; it *entered* after collecting in an area remote from his premises and over which he had no control. Nor did it flow or leak through the plaintiff's sidewalks, driveway, foundations, walls, or floors. It . . . was discharged from his plumbing . . . systems. The insurer, under these circumstances, was clearly not entitled to a summary judgment.[5]

Contrary to Selective Way's arguments, *Crawley* cannot legitimately be distinguished on the basis of the "direct or indirect" causation language of the policy at issue here, because the policy in *Crawley*

---

[3] (Citation and punctuation omitted; emphasis supplied.) *Hirschfield v. Continental Cas. Co.*, supra.

[4] 132 Ga. App. 181 (207 SE2d 666) (1974).

[5] (Emphasis in original.) Id. at 183. See also *Hirschfield v. Continental Cas. Co.*, supra (surface water exclusion applies to rainwater that backs up from a storm drain and enters a building from the surface of the ground in a diffused state).

contained equally comprehensive causative language which excluded losses "caused by, resulting from, contributed to or aggravated by" surface water.[6]

"As with any insurance policy, we construe the policy exclusions most strongly against the insurer and in favor of providing the indemnity sought."[7] The water in this case lost its character as "surface water" under the well-recognized definition of that term. Water that gathers into a 13-foot-deep pit and flows into a structure through the length of an underground pipe is no longer diffused, is no longer on the surface of the ground, has gathered into a body, and has followed a defined course through the pipe and into the building.

Because the damage in this case was not directly or indirectly caused by water that could be considered "surface water" at the time the damage was sustained, the exclusion does not apply. The trial court correctly denied Selective Way's motion for summary judgment on this ground and entered judgment for Litigation Technology.

2. We find no error in the trial court's denial of Selective Way's motion for summary judgment on Litigation Technology's allegation of a bad faith refusal to pay a claim. Selective Way's exclusionary ground for refusing to pay was unfounded; this, coupled with the fact that Selective Way initially agreed to pay and did not assert its exclusionary defense for over a year and a half creates a jury issue as to whether it exercised bad faith in refusing to pay Litigation Technology's claim. The existence vel non of bad faith is a jury question.[8] Moreover, "[t]he issue of bad faith should be judged by the case made at trial, not by the preliminary proofs or other ex parte affidavits."[9]

*Judgment affirmed. Johnson, P. J., Miller and Adams, JJ., concur. Andrews, P. J., Ruffin, P. J., and Ellington, J., dissent.*

RUFFIN, Presiding Judge, dissenting.

The majority has effectively rewritten the insurance policy that Selective Way Insurance Company ("Selective Way") issued to Litigation Technology, Inc. ("Litigation Technology"). Accordingly, I dissent.

1. The "surface water" exclusion in Litigation Technology's policy provides that Selective Way

---

[6] *Aetna Fire Underwriters Ins. Co. v. Crawley*, supra at 182.

[7] (Punctuation and footnote omitted.) *Fidelity Nat. Title Ins. Co. v. Matrix Financial Svcs. Corp.*, 255 Ga. App. 874, 878 (1) (b) (567 SE2d 96) (2002).

[8] *Blue Ridge Ins. Co. v. Maddox*, 185 Ga. App. 153 (3) (363 SE2d 595) (1987).

[9] (Citation omitted.) *Stegall v. Guardian Life Ins. Co.*, 171 Ga. App. 576, 577-578 (320 SE2d 575) (1984).

will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. . . .

g. Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not.

Litigation Technology admitted below that the water that entered its offices began as rainwater that accumulated on the ground and flowed down Spring Street. But it argues — and both the trial court and the majority apparently agree — that something other than *surface* water caused the flood damage.

To support its argument, Litigation Technology relies on *Aetna Fire Underwriters Ins. Co. v. Crawley*.[10] In *Crawley*, surface drainage from a heavy rainfall filled an excavated pit in the ground, then flowed into a sewer line through an open tap and entered the claimant's house via the plumbing connections. The insurer declined coverage for the resulting damage based on the policy's surface water provision, which excluded losses " 'caused by, resulting from, contributed to or aggravated by' . . . surface water."[11] The trial court denied the insurer's motion for summary judgment and we affirmed, noting that " '[s]urface waters' . . . comprise water flowing on the surface of the ground at the time they enter the home of the insured."[12] Citing this analysis, Litigation Technology asserts that the surface water exclusion does not apply here because the rainwater that made its way into its basement offices entered through a pipe after flowing from the street into an excavated pit below the ground.

Pretermitting whether surface water loses its character by entering a pit and flowing through a pipe, I believe that the exclusion in this case bars Litigation Technology's claim. Unlike the policy in *Crawley*, Litigation Technology's policy specifically excludes any damage caused *directly or indirectly* by surface water. Moreover, it specifies that surface water need not be the only cause of the damage. The exclusion applies regardless of whether some other cause "contributes concurrently or in any sequence to the loss."

---

[10] 132 Ga. App. 181 (207 SE2d 666) (1974).

[11] Id. at 182 (1).

[12] Id. at 183.

Litigation Technology does not dispute that rainwater moving down Spring Street triggered the series of events that created the office flood. And although the rainwater did not flow from the ground directly into Litigation Technology's premises, it certainly fell within the definition of "surface water" when it entered the excavated pit.[13] Regardless of whether it became something other than surface water as it moved through the pipe and into the basement office space, or whether it carried with it sewage and other debris from the pit, the initial surface water *cannot be ignored as a cause of the flood and any resulting damage.*

I recognize that "[e]xceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms."[14] Nevertheless, an unambiguous policy exclusion "must be given effect, even if 'beneficial to the insurer and detrimental to the insured.'"[15] And "[w]e will not strain to extend coverage where none was contracted or intended."[16]

The surface water exclusion plainly applies to damage caused directly or indirectly by surface water, whether alone or in conjunction with any other cause. Although the majority argues that surface water did not enter Litigation Technology's office space, such water began the sequence of events resulting in the flood and damage. Thus, surface water was a contributing factor in the loss, even if it played its role at the front end of this sequence. Under these circumstances, Litigation Technology's claim falls within the exclusion. To find otherwise requires an improperly strained reading of the policy language.

2. Litigation Technology also argues that, even if the surface water exclusion applies, Selective Way waived its right to rely on that exclusion. Again, I disagree.

To support its waiver argument, Litigation Technology asserts that Selective Way initially stated that it would cover the claim and did not invoke the surface water exclusion until Litigation Technology filed suit, over 18 months after the flood. Litigation Technology further notes that, shortly after the flood, a company hired to investigate the incident informed Selective Way that, in its opinion, the damage had been caused by surface water.

---

[13] See *Hirschfield v. Continental Cas. Co.*, 199 Ga. App. 654, 655 (405 SE2d 737) (1991).

[14] (Punctuation omitted.) Id.

[15] *Jefferson Ins. Co. of New York v. Dunn*, 269 Ga. 213, 216 (469 SE2d 696) (1998).

[16] Id.

"The longstanding general rule is that neither waiver nor estoppel can be used to create liability not created by an insurance contract and not assumed by the insurer under the terms of the policy."[17] Thus, "[t]he doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks expressly excluded by its terms."[18] An insurer may waive policy provisions inserted for its benefit, as well as policy conditions or limitations upon which it might otherwise rely.[19] Such waiver, however, may not be used to *enlarge* coverage to include a risk not assumed by the insurer.[20]

Litigation Technology's policy excluded the risk of damage caused directly or indirectly by surface water. To apply waiver here "would result in redrafting [the] policy to include a risk specifically excluded by mutual agreement."[21] Despite Selective Way's conduct, therefore, the insurer did not waive the surface water exclusion.[22] And, as discussed in Division 1, the exclusion bars Litigation Technology's claim for damages. In my opinion, therefore, the trial court erred in denying Selective Way's motion for summary judgment.

I am authorized to state that Presiding Judge Andrews and Judge Ellington join in this dissent.

DECIDED OCTOBER 8, 2004 — ▮▮▮▮▮▮▮▮

*Drew, Eckl & Farnham, Brian T. Moore, Clayton H. Farnham,* for appellant.

---

[17] *Andrews v. Ga. Farm &c. Ins. Co.,* 226 Ga. App. 316, 317 (487 SE2d 3) (1997). In *Prescott's Altama Datsun v. Monarch Ins. Co.,* 253 Ga. 317, 318 (319 SE2d 445) (1984), our Supreme Court set forth an exception to this rule in cases where a liability insurer, "without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of noncoverage." The *Prescott* exception has no application in this case, which does not involve the defense of Litigation Technology against a third-party liability claim.

[18] (Punctuation omitted.) *Kilgore v. Southern Gen. Ins. Co.,* 210 Ga. App. 434, 435-436 (2) (436 SE2d 547) (1993). See also *Caribbean Lumber Co. v. Phoenix Assurance Co. of New York,* 227 Ga. App. 236, 241 (5) (488 SE2d 718) (1997) ("The coverage of a policy cannot be extended by estoppel or by waiver.").

[19] See *Sargent v. Allstate Ins. Co.,* 165 Ga. App. 863, 865 (1) (303 SE2d 43) (1983).

[20] See id. at 865-866 (through its conduct, automobile liability insurer could waive condition requiring that all covered drivers reside in policyholder's household because such waiver "in no way result[ed] in an expansion of the coverage so as to include a risk not assumed by the insurer"; policy covered risk of injury and death through an automobile collision, which was risk involved in claim).

[21] *Andrews,* supra.

[22] See id.; see also *Jacobs v. American Interstate Ins. Co.,* 249 Ga. App. 795, 797 (3) (549 SE2d 767) (2001) (statements by representatives of insurer that policy offered coverage for incident "amounted to mere opinions" and could not "change the unambiguous terms of the policy").

*Magill & Atkinson, Stephen F. Dermer, Laura D. Tubbs, Austin & Sparks, John B. Austin, John T. Sparks,* for appellee.