[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11100
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-00018-JRH-BKE


PAMELA T. WILLIAMS,
f.k.a. Pamela Thomas,

                                        Plaintiff - Appellant,

versus

STATE FARM FIRE AND CASUALTY
INSURANCE COMPANY,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(July 17, 2014)

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

This case involves a dispute over coverage in a homeowner's insurance policy that State Farm issued to Pamela Williams. Williams brought suit against State Farm alleging violations of state law for breach of contract and for bad faith penalties under O.C.G.A. § 33-4-6. She appeals the district court's decision granting State Farm Fire and Casualty Company's (State Farm) motion for summary judgment. We affirm.

## STANDARD OF REVIEW

We review "a grant of summary judgment by a district court de novo." *Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1341 (11th Cir. 2007). In doing so, we "view all facts and reasonable inferences in the light most favorable to [Williams,] the nonmoving party." *Id.* But "[s]ummary judgment is warranted where there is no genuine issue of material fact." *Wright v. Aetna Life Ins. Co.*, 110 F.3d 762, 764 (11th Cir. 1997) (citing Fed. R. Civ. P. 56(c)).

## BACKGROUND

On August 7, 2012, Williams's property in Martinez, Georgia, became flooded with "thigh deep" water runoff from a rainstorm. The storm water on Williams's property had accumulated at a culvert located up on a hill behind Williams's and a neighbor's property. When it rains, storm water is supposed to flow into the culvert and drain away from the residences via a storm drainage

system that travels under the street.[1]  However, over time, the drainage system had become clogged with debris.  Consequently, during the storm on August 7, the storm water overflowed from the culvert and flowed down the hill, onto Williams's property and then into her home.[2]  Water, mud, and other debris entered Williams's home through the doors and crawlspace underneath her house.  The flow of water, mud, and debris continued for about an hour and only began to ebb once a storm drain manhole cover was removed to allow more rainwater into the storm drainage system.  The water caused extensive damage to Williams's house and belongings, and Williams and her family were forced to evacuate the home during repairs.

As of August 7, 2012, Williams's home was insured under State Farm's homeowner's insurance policy number 81-NU-1664-1 (the Policy).  The Policy covers certain accidental direct physical losses to the dwelling itself, but excludes loss "which would not have occurred in the absence of . . . flood [or] surface water," regardless of the cause of the flood or surface water and regardless of whether the negligent conduct of a governmental body, or faulty design,

[1] The storm drainage system was maintained by Columbia County, Georgia.  A similar storm event occurred in 2006, and the resulting flooding caused damage to Williams's property and home.  State Farm denied coverage for the damage under the operative insurance policy at the time; however, Columbia County compensated Williams for the damage.

[2] Since the August 7, 2012 rainstorm, Columbia County has made improvements to the storm drainage system and removed nearby trees and their root systems.

construction, or maintenance directly or indirectly caused, contributed to, or aggravated the loss.

By letter dated August 19, 2012, State Farm denied Williams's claim under the Policy.  Williams later submitted a demand letter on September 20, 2012, notifying State Farm of her intent to seek bad faith penalties and attorney's fees pursuant to O.C.G.A. § 33-4-6.  State Farm reaffirmed its denial in a letter dated November 7, 2012.   Williams then filed suit in the Superior Court of Columbia County, raising claims for breach of contract under Georgia law and for bad faith penalties under O.C.G.A. § 33-4-6.  State Farm removed the suit to federal court and eventually moved for summary judgment.  The district court granted State Farm's motion on February 21, 2014, concluding that the Policy's "surface water" exclusion barred any coverage for damage to Williams's residence and personal property.  This appeal follows.[3]

## DISCUSSION

---

[3] Williams has also filed a motion to certify two questions to the Georgia Supreme Court to help define the meaning of "surface water."  State Farm opposes this motion.

Where there is no state precedent directly on point, a federal court considers whether the state court decisions "provide sufficient and significant guidance" on how the state's highest court would rule. *Jennings ex rel. Edwards v. BIC Corp.*, 181 F.3d 1250, 1254–55 (11th Cir. 1999).  Georgia courts have adopted the "widely accepted definition" of "surface water" and applied that definition to insurance policies, without finding the term to be ambiguous. *Selective Way Ins. Co. v. Litig. Tech. Inc.*, 606 S.E. 2d 68, 70–71 (Ga. Ct. App. 2004) (internal quotation marks omitted); *see Hirschfield v. Cont'l Cas. Co.*, 405 S.E. 2d 737, 738 (Ga. Ct. App. 1991); *Aetna Ins. Co. v. Walker*, 105 S.E. 2d 917, 920 (Ga. Ct. App. 1958).  As is reflected herein, Georgia law provides ample guidance on the issue, and Williams's motion is DENIED.

On appeal, Williams argues that the overflowed water from the storm drain lost its character as "surface water" when it entered her swimming pool, mixed with the water in the pool, and then left the pool and entered her home. Under Georgia law, once this water was concentrated in one area and left that area, it lost its classification of "surface water." State Farm argues that this swimming-pool theory was never argued before the district court or briefed by the parties, and that therefore we should not consider it on appeal. We agree that this theory of recovery was not considered by the district court and accordingly, we will not consider it on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1326–27 (11th Cir. 2004). In the district court, Williams argued that the water lost its characterization as "surface water" when it entered a man-made storm water diversion system. That is the theory that was briefed by the parties and what the district court considered when it granted State Farm's motion for summary judgment.

We conclude that the Policy's "surface water" exclusion operates to bar coverage for both damage to Williams's residence and damage to Williams's personal property. Contrary to Williams's argument, Georgia law is clear on the definition of "surface water":

> [W]ater which is derived from falling rain or melting snow, or which rises to the surface in springs, *and is diffused over the surface of the ground, while it remains in such diffused state,* and which follows no defined course or channel, which does not gather into or form a

5

natural body of water, and which is lost by evaporation, percolation, or natural drainage.

*Selective Way Ins. Co. v. Litig. Tech. Inc.*, 606 S.E. 2d 68, 70–71 (Ga. Ct. App. 2004) (internal quotation marks omitted). State Farm cites to *Hirschfield*, which is instructive. There, rainwater "flowed or rose" from a grate-covered, underground storm drain located near the plaintiffs' home, moved "across the surface, and . . . entered a vent leading into the plaintiffs' basement." *Hirschfield v. Cont'l Cas. Co.*, 405 S.E. 2d 737, 738 (Ga. Ct. App. 1991). There was also evidence that "a blockage in the underground drain caused rainwater, which had previously entered the drain at an upstream location, to be diverted upward through the grate and eventually across the surface area into the basement." *Id.* In affirming summary judgment in favor of the insurer, the Georgia Court of Appeals found that "the 'surface water' exclusion clearly and explicitly excludes coverage under the present circumstances." *Id.* at 739.

Like *Hirschfield*, debris and tree roots prevented the rainwater from properly flowing through the drainage system near Williams's home. Instead of flowing into the culvert and the drainage system, the storm water overflowed from the culvert, moved across the surface of certain properties, and flowed into Williams's home and crawlspace. Also like *Hirschfield*, even though the water was intended to drain via a storm system, it still maintained its character as "surface water" at the time the water entered Williams's home and crawlspace.

6

The storm water entered Williams's home on the surface of the ground. The storm water flowed in a diffused state down a hill from the culvert and across Williams's and a neighbor's yard. Williams has failed to show that there is a genuine issue of fact about whether the storm water flowing into her residence was "surface water" as defined under the Policy. The district court is affirmed.[4]

**AFFIRMED.**

---

[4] Because we affirm the district court's finding that Williams failed to demonstrate that her claim was covered by the Policy, Williams's argument that State Farm refused to honor her claim under the Policy is moot.